SOUTHERN MUTUAL LIFE INSURANCE ASSOCIATION
*v.* DURDIN.

</div>

1. No special form of words is necessary to make an assignment of a chose in action. Any language, however informal, if it shows the intention of the owner of the chose in action to at once transfer it, so

that it will be the property of the transferee, will be sufficient to vest the title in the assignee.

2. Where a policy of life insurance was made payable to the estate of the insured, and he made a written statement that he had that day made application to the company to change the beneficiary from his estate to a person named, stating that if the change was not made during his life he wanted the money paid to such person, who had rendered to him services as a cook during a number of years, for which he owed such person; and where he delivered the policy together with this written statement to the person named, he intending it and she accepting it as an assignment of the policy; and where on the same day he wrote to the company enclosing the amount which it charged for assenting to a change of beneficiary and informing it of the desired change, and that he owed the person mentioned and wished such person "to have something as a gift after I am gone," *Held*, that this operated as a transfer of the policy and authorized the assignee to bring suit on it after the death of the insured.

3. None of the grounds of demurrer was meritorious.

<center>Argued November 14, 1908.—Decided April 19, 1909.</center>

Action upon insurance policy. Before Judge Ellis. Fulton superior court. July 27, 1908.

Anna Durdin brought suit against the Southern Mutual Life Insurance Association on a policy issued by it to William D. Durdin. The only portion of the policy necessary to be set out is the following: "The Southern Mutual Life Insurance Association, upon satisfactory proof of the death of the said William D. Durdin, the assured, and the surrender of this policy, will pay to estate, the beneficiary named in the application of the said assured, as many dollars as there are members of the branch above named, in good standing, on the day of the death of the said assured." The petition alleged, in brief, as follows: Defendant is indebted to petitioner in the sum of $1,500. On February 18, 1908, it issued the policy of insurance to which reference has been made above, to William D. Durdin, insuring his life. Durdin paid the admission fee and all dues and assessments of which he had notice to the time of his death. On the first day of March, 1908, he transferred and assigned the policy to the plaintiff. The assignment was in writing, a copy being attached to the petition. He died on March 9, 1908. Proof of his death has been furnished to the defendant as provided in the policy, but it fails and refuses to pay the amount due thereon. On the day of his death there were 1,500 members in good standing in the branch of the company mentioned in the policy. Attached to the petition as exhibits were copies of the

policy and of the instrument claimed to be an assignment. The latter was as follows: "This is to certify that I, W. D. Durdin has this day made application for change in his Life Insurance Policy from Estate to Georgia Ann Durdin and in case the change is not made during my life time I want the money paid to her for her services as cook for me during the last 35 years. I owe her for her services and want it paid before anything done with my estate. I have this day signed this affidavit in present of Chas. T. Pitts, agent for Southern Life Ins. Co. Atlanta, Ga." This was signed by Durdin and attested by two witnesses.

The plaintiff amended her petition by alleging as follows: The policy to which reference was made in the instrument attached to the original petition as an assignment was the policy on which suit was brought, and this was the only policy held by Durdin at that time. On March 1, 1908, Durdin, in writing, notified the defendant company of the assignment of the policy to plaintiff, a copy of the letter containing such notice being attached to the amendment as an exhibit. The defendant consented to the assignment and accepted the sum of sixty cents, which was its charge for so consenting, and that amount was paid by Durdin and accepted by the company for that purpose. It was the intention of Durdin to assign the policy to the plaintiff. He executed the instrument attached to the original petition and delivered it, together with the policy, to the plaintiff, and it was accepted by her as a transfer; and on the same day Durdin notified the defendant of the transfer of the policy, as above stated. The letter, of which a copy was attached to the amendment as an exhibit, was as follows:　　　　　　　　　　"March 1st, 1908. Newborn, Ga. "Mr. Thos. C. Candler, Atlanta, Ga.

"Dear Sir:—Inclosed find 50 [60?] cents for change in my policy from Estate to Georgia Anna Durdin. My policy No. 61051 class (4). The woman spoken of as beneficiary is my cook and I want to leave her one policy. I also want four more policies in your company, can I get them by standing Medical examination? Georgia Durdin has cooked for me for 35 years and I want her to have something as a gift after I am gone. Please attend to same for me.

　　　　　　　　　　Respt. W. D. Durdin.
"Please let me hear from you in regard to it. Respt. W. D. D."

Defendant demurred to the petition; and after the amendment was made, the demurrer was overruled. Defendant excepted.

*Candlers, Thomson & Hirsch* and *R. L. D. McAllister,* for plaintiff in error. *Moore & Branch,* contra.

LUMPKIN, J. (After stating the foregoing facts.) The only question made and argued in this case was whether the allegations of the petition showed an assignment of the insurance policy on the life of Durdin to the plaintiff. At common law choses in action were not assignable. Courts of equity did not recognize transfers of mere litigious rights, but did recognize assignments of choses in action, and looked upon the assignee as the true beneficial owner. In this State choses in action arising in contract are assignable in writing. The Civil Code of 1895, § 3077, declares, "All choses in action arising upon contract may be assigned so as to vest the title in the assignee, but he takes it, except negotiable securities, subject to the equities existing between the assignor and debtor at the time of the assignment, and until notice of the assignment is given to the person liable." No special form of words is necessary to make an assignment. Any language, however informal, if it shows the intention of the owner of the chose in action to transfer it, will be sufficient to vest the property in the assignee. 4 Cyc 42; 2 Am. & Eng. Enc. Law (2d ed.), 1055. In *Dugas v. Matthews,* 9 *Ga.* 510 (54 Am. D. 361), the sufficiency of an instrument to operate as an assignment of a judgment was under consideration. It was "held, that a formal deed of assignment is not necessary, but that evidence in writing, which shows that the plaintiff has conveyed the interest in the judgment or execution to the person claiming to be assignee, will be sufficient to enable him to sue out process of garnishment thereon." The paper there relied on as an assignment of the judgment had at its head a statement of the parties to the case, and the court and term from which the fi. fa. issued. It was addressed to the attorney at law who represented the plaintiff, was signed by the plaintiff, and contained the following statement: "Having assigned the above judgment and execution to Lewis A. Dugas, you are authorized to use my name in any proceeding yourself or the said Lewis A. may deem necessary to the collection of said debt, and you are authorized to act as my attorney in any court proceeding instituted for the collection of the same, should you deem the use of my name necessary." It

was held that this was a sufficient written assignment of the judgment. In the opinion Nisbet, J., said: "We can not believe that the ends of justice can be subserved by requiring, under the act of 1829, a technically formal deed of assignment. What we do require is, that there be intelligible written evidence that the judgment is the property of him who claims to be its assignee. Such we consider this order to be." In *Stanford* v. *Connery*, 84 *Ga.* 731 (11 S. E. 507), it was held that a letter from the usee of an execution to his attorney, stating that it was the property of a named person, "and is subject to his control and direction, and you are hereby authorized to pay the amount over to him when collected, or assign him the execution if he requires it," was an assignment to the person so named, and that the usee could not afterwards transfer the execution to another. In *Loudermilk* v. *Loudermilk*, 93 *Ga.* 443 (21 S. E. 77), where the payee of a non-negotiable promissory note indorsed it to a third person by name, without any words of limitation or exception, it was held that there was a written assignment of the note to the indorsee, and that under the code, § 3077, the latter could maintain an action upon it in his own name against the maker. In *First National Bank* v. *Hartman Steel Co.*, 87 *Ga.* 435 (13 S. E. 586), one company which had done work for another drew a draft on the debtor for the amount of the balance due, payable fifteen days after date, "as advised," indorsed it to the bank, received credit for the amount, and checked out the amount on the same day. The words "as advised" referred to a letter which the drawer on the same day wrote to the company for which the work was done, and in which it was said, "We have to-day made draft on you at 15 days, for balance of contract on stand-pipe at Columbus, $2,783.00. This draft, of course, we would like for you to accept, but it is not absolutely necessary if, for any reason, you prefer not doing so. We make the draft, however, inasmuch as we have gotten some money from the First National Bank here on this work, and simply want to transfer this balance to them. In other words, we wish the draft paid whenever the amount is due, either by taking up the draft, or remitting to the First National Bank here, as you see fit. . . It would be quite an accommodation to us if you would transfer this amount in the manner indicated." At the time the draft was received by the bank, it was agreed between it and the treasurer of

the drawer that the latter would notify the drawee of the transfer to the bank of the balance due on the contract. The letter was received by the drawee, but it refused to accept the draft, notifying the drawer that it would not do so till the work was satisfactory to its representative. It was held that this constituted an assignment of the chose in action to the bank, and it was entitled to the fund over garnishing creditors of the assignor. See also *Western Union Tel. Co.* v. *Ryan,* 126 *Ga.* 191 (55 S. E. 21); *Walton* v. *Horkan,* 112 *Ga.* 814 (38 S. E. 105, 81 Am. St. R. 77).

Applying these principles to the case now before us, the allegations of the petition were sufficient to show an assignment of the policy of insurance to the plaintiff. It was payable to the estate of the assured, and he had a right to assign it without the consent of the company, so far as anything in this record appears to the contrary. Civil Code of 1895, §2116; *Rylander* v. *Allen,* 125 *Ga.* 206 (53 S. E. 1032, 6 L. R. A. (N. S.) 128). The writing which he executed stated that it was to certify that he had that day made application for change in his life-insurance policy from his estate to the present plaintiff, "and in case the change is not made during my lifetime, I want the money paid to her for her services as cook for me during the last 35 years. I owe her for her services, and I want it paid before anything done with my estate." It was alleged that this instrument together with the policy of insurance to which it referred (being that on which suit was brought) was delivered to the plaintiff, and accepted by her as a transfer, and that it was the intention of the insured to assign the policy to her. It was also alleged that on the same day he sent to the company the letter enclosing fifty (or sixty) cents for a change in his policy, that being the correct amount, and stating that he wanted her to have something "as a gift after I am gone;" and that the company consented to the change and accepted the amount sent to it, which was its charge for consenting thereto. These allegations were sufficient to show an assignment of the policy, and on demurrer they are to be taken as true.

The writing sufficiently describes the policy to be capable of being applied to its subject-matter. It states that the insured has applied for a change in his life-insurance policy from his estate, and that he has signed the paper in the presence of the agent of "The Southern Life Ins. Co." of Atlanta, Georgia. The policy

was issued by the Southern Mutual Life Insurance Association of Atlanta, Georgia, and was payable to his estate. It was alleged that he had no other policy of life insurance than this, and that on the same day he wrote to that company the letter to which reference has already been made.

It was argued on behalf of the plaintiff in error that the alleged assignment was testamentary in character. If a present transfer of the policy was made, it was valid, although payment would not be made on it until it matured by the death of the insured. An assignment of a non-negotiable note may be good in the present, although it may not be due until a future day. So a policy itself is assignable before the death of the insured, and the assignment is not testamentary because payment is not to be received by the assignee until after the death of the insured. There is nothing about this instrument to indicate a testamentary intention, but the surroundings, so far as they appear from the record, indicated an opposite intention. If the purpose of the maker had been to execute a will, it would have been entirely unnecessary to apply to the insurance company, and make a required payment, for that purpose.

It was also made a ground of demurrer that the purported consideration of the assignment was the services of the plaintiff as cook during thirty-five years, but that it does not set out what such services were worth, or whether any payment had been made therefor. This ground is not well taken.

In the brief of counsel for plaintiff in error there is some discussion as to the propriety of the allowance of the amendment to the petition; but there is no assignment of error which raises any point on that subject.

*Judgment affirmed. All the Justices concur.*